CENTRAL TRUST CO. OF NEW YORK *v.* MARIETTA & N. G. RY. CO.,
(JACKSON & SHARP CO., Intervener.)

*(Circuit Court of Appeals, Fifth Circuit.* December 7, 1891.)

FORECLOSURE OF RAILROAD MORTGAGE — CONDITIONAL SALE — RIGHTS OF VENDOR — INCREASED VALUE OF ROLLING STOCK.

In a suit to foreclose a railroad mortgage, wherein an intervener claimed title to certain rolling stock as vendor under a conditional sale thereof, the evidence showed that the value of rolling stock had increased 10 per cent. since the time when the rolling stock in question was furnished by the intervener. *Held* that, in determining the sum which the receiver in the suit should pay in order to retain possession of the rolling stock, 10 per cent. should be added to the cost thereof before deducting a percentage per annum for wear and tear.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

Bill in equity by the Central Trust Company of New York against the Marietta & North Georgia Railway Company to foreclose a mortgage made by the railway company. The Jackson & Sharp Company intervened, claiming certain rolling stock and railway equipment in possession of the receiver appointed in the suit. Decree for intervener. Plaintiff appeals. Affirmed.

*H. B. Tompkins,* for appellant.

*Hoke Smith,* for appellee.

Before PARDEE, Circuit Judge, and LOCKE and BRUCE, District Judges.

PARDEE, J. The Jackson & Sharp Company intervened in the case of *Central Trust Co. of New York* vs. *Marietta & Georgia Ry. Co.,* a suit pending for the foreclosure of a mortgage in the circuit court of the United States for the northern district of Georgia, claiming that the certain rolling stock and railway equipment described, then in the possession of the receiver in the main case, belonged to the intervener, and praying that the receiver be directed to turn over said property, with full compensation for its use, or else to pay the value thereof as stated, $60,000. The court allowed the intervention to be filed, referred the same to a special master, directing him to report as to the validity of the claim of the petitioner, and as to the advisability of the purchase of the property by the receiver. Thereafter the petitioner, under leave of the court, filed an amended petition, stating that the cars claimed were placed on the Marietta & North Georgia Railway through the instrumentality of George R. Eager, as president of the North Georgia Improvement Company, and with the full knowledge and consent of the vice-president and acting president of the railway company; that the property belonged to the intervener; and that the title was to remain in it; further

showing that the intervener has never received one cent from the improvement company, or from any other source, on account of said cars, except two certain cars mentioned. Pending the hearing before the master, the Central Trust Company, complainant in the main suit, filed an answer to the intervention, controverting on various grounds the intervener's right to recover.

Other facts necessary to the proper consideration of this case will be found in the extracts quoted from the special master's report, as follows:

"First, as to the value of said rolling stock. Under the ruling of the court in similar interventions, I find the value of the rolling stock on the 19th January, 1891, the date when the receiver was appointed. I find the value of the first-class passenger-car No. 15 and the parlor-car No. 16, if entirely new, January 19, 1891, to be ten per cent. advance of what they were sold for to the North Georgia Improvement Company in November, 1889, The price at which both cars were sold to the North Georgia Improvement Company was $9,700. Ten per cent. advance added to this sum makes the value of said two cars, if entirely new, $10,670, on January 19, 1891. The evidence shows that they have been in use by the Marietta & North Georgia Railway Company about twelve months, and that the percentage of deterioration for wear and tear and use of cars is 6 per cent. per annum. The amount to be deducted, therefore, on account of wear and tear, is $640.20, leaving the net value of said cars, January 19, 1891, as $10,029,80. I find and report this, therefore, as the value of said cars at said date, with interest at 7 per cent. per annum from said date. The interveners were paid about $3,000 on account of said cars by the North Georgia Improvement Company, but, as the said North Georgia Improvement Company transferred all its interest in said cars back to the interveners before the filing of this intervention, I do not think this payment is material. The evidence shows that the seven passenger-cars, if entirely new, were worth, on the 19th of January, 1891, $32,-725; and that the three combination mail, baggage, and express cars, if entirely new, were worth on said date the sum of $8,550,—an aggregate amount for the ten cars of $41,275. The evidence shows that these ten cars have been in use by the Marietta & North Georgia Railway for about four months. Deducting from this amount, at the rate of 6 per cent. per annum for deterioration from use, 2 per cent. for the four months, the sum of $825.50, leaves the net value of these cars on January 19, 1891, $40,449.50. I therefore find and report the value of the twelve cars on January 19, 1891, to be $50,479.30, to which 7 per cent. annum interest must be added from said date. The evidence shows that all of said cars are necessary to the operation of the road by the receiver, and I therefore recommend that he be authorized to purchase the same at their value, as above stated, on January 19, 1891, with 7 per cent. per annum added from said date. As to the receiver's ability to pay for the same, I refer to my reports filed in the Hiawassee Company intervention and Jackson & Woodin Company intervention. The evidence in this case shows that these cars were purchased by the North Georgia Improvement Company from the intervener, Jackson & Sharp Co.; the first-class passenger-car No. 15 and parlor-car No. 16 having been purchased by written contract November 1, 1889, but not legally executed until the 19th day of January, 1891. In said written contract title was reserved in the vendors until fully paid for. As to the other ten cars, there was no consummated contract or purchase, either oral or written, but it was understood, both by the interveners, by the North Georgia Improvement Company, and by Lenox Smith, vice-president of the Marietta & North Georgia Railway Company,

that these cars were to remain the property of the Jackson & Sharp Co. until they were fully paid for; and the evidence shows that they have not been paid for. All of these cars were placed upon the **Marietta & North Georgia Railway** without any contract, either oral or written. Counsel for trust company contend in this case, as in the other cases, that the interveners have no lien on said rolling stock as against the mortgage bonds now being foreclosed in this court, as said written contract covering the two cars was never recorded, and there was no written contract as to the other cars. In support of this position he cites the act of the legislature approved October 13, 1889. The master is of the opinion in this case, as in the other cases, that the contract as to the first two cars, though not recorded, is valid as to the parties thereto; and that the verbal contract as to the other ten cars is valid as to the parties thereto; and that the Marietta & North Georgia Railway Company acquired no title whatever to said property, but simply held possession of it under an implied contract of bailment. The master reiterates in this case his opinion in the other cases, that George R. Eager was not required by his contract, or by any evidence introduced in the case, to equip and pay for the rolling stock placed on the Marietta & North Georgia Railway Company."

To the special master's report the Central Trust Company filed exceptions, as follows:

"*First.* The special master had no right or authority to hear evidence or to make a finding as to what the first-class passenger-car No. 15 and parlor-car No. 16 would have been worth, if entirely new, on January 19, 1891; but it was only proper that the special master should find what said cars were worth on 19th of January, 1891, taking into consideration the agreed price for which they were sold, and deducting therefrom such percentage as was proven they had deteriorated by use. And the said special master has found that such deterioration for wear and tear and use of the cars was at the rate of 6 per cent. per annum from November, 1888, to 19th of January, 1891; and he therefore should have deducted that amount from $9,700, the price at which said cars were sold, and not from that price, with 10 per cent. added thereto, making $10,700. *Second.* Said Central Trust Company objects and excepts to the finding of said special master in respect to the seven passenger-cars and the three combination mail, baggage, and express cars for the same reason and upon the same grounds set forth and alleged in the foregoing objection, No. 1; that is, because the master took into consideration what the said ten cars last above referred to, if entirely new, might have been worth on the 19th of January, 1891, etc., instead of finding the value of said cars on January 19, 1891, by ascertaining the price for which they were sold, and deducting therefrom the percentage for wear and tear. *Third.* Said Central Trust Company further objects and excepts to said master's report because it finds anything in favor of the intervener; and this respondent avers that under the evidence in this cause, and the law as applicable thereto, the intervener, Jackson & Sharp Co., did not reserve or retain any title whatever to said railway equipment, or any part thereof; and, therefore, when the North Georgia Improvement Company placed said equipment, through George R. Eager, upon the Marietta & North Georgia Railway, that then and there the title to said equipment vested in said railway company, and that no lien or reservation of title attached to said property as against said railway company superior to the lien of the mortgage bonds now being foreclosed."

The court below affirmed the master's report, and the Central Trust Company appealed, assigning for error on appeal the same questions made in the exceptions to the master's report. We therefore consider the case as made by the exceptions.

The first two exceptions are with reference to the method of the master in arriving at the value of the property on January 19, 1891, the date the receiver obtained possession, and which was the date which the court in other like interventions had, at the instance of the Central Trust Company, fixed for the determination of the value of rolling stock in possession of the receiver claimed by outside parties. It appears that the rolling stock claimed in the present intervention was new when, shortly before January 19, 1891, it was delivered to the Marietta & North Georgia Railway Company; and the master ascertained the actual value on January 19, 1891, by finding what it would have been if new, and then deducting the per cent. of deterioration in value by use. The evidence adduced as to value before the master was not given directly as to the value on the 19th of January, 1891, and could not well have been, as the hearing was nearly six months later, and none of the witnesses testifying as to the value had inspected the rolling stock on that day. The evidence showed a sharp increase—10 per cent.—in the value of rolling stock in the time between the delivery of the rolling stock in question and January 19th, and was as to the actual value of similar rolling stock new on January 19th, and then as to the per cent. of usual decrease in value of rolling stock by wear and tear when in use. The master was therefore limited by the evidence to the method he followed in giving the value on a given day. The contention that the value of rolling stock on January 19th was what it had been agreed was the value at the time of the lease or sale, less deterioration by use to January 19th, cannot be admitted, because, as before said, the evidence showed the stock had increased in value prior to January 19, 1891.

The third exception was to the finding of anything in favor of the intervener, because exceptor avers that, under the evidence in the case and the law applicable thereto, the intervener did not reserve nor retain any title whatever in the said railway equipment. The evidence fully sustains the report of the master in finding that, as a matter of contract, the intervener did retain the title and ownership of the rolling stock in question. Whether or not the law applicable to the transaction defeated the express retention of ownership by reason of the failure to record the titles in accordance with the Georgia act of 1889 has been considered and determined adversely to the appellant in the case of *Central Trust Co.* v. *Marietta & N. G. Ry. Co.*, 48 Fed. Rep. 865, (just decided,) and we see no reason to go over the ground again. It is not pretended in this case that the intervener had notice of, or is in any wise charged with notice of, the equities alleged to exist between the bondholders of the Marietta & North Georgia Railway Company and George R. Eager, contractor, to construct, and perhaps equip, the said railroad, arising out of the Hambro agreement, and the issuance of certificates thereunder by which Eager obtained the issuance of railroad bonds. Our conclusion of the whole case is that there is no error prejudicial to the appellant in the decree rendered by the court below, and that said decree should be affirmed. And it is so ordered.