CENTRAL TRUST CO. OF NEW YORK et al. v. MARIETTA & N. G. R. CO. et al.

BOSTON SAFE-DEPOSIT & TRUST CO. v. GROOME et al.

(Circuit Court of Appeals, Fifth Circuit. May 12, 1896.)

No. 460.

EQUITY PRACTICE—PARTIES BOUND BY ORDER—PRIORITY OF LIENS.

The M. Railroad Company, owning a line of railroad in Georgia, made two mortgages of the same to the B. Trust Co. to secure issues of bonds. Subsequently it was consolidated with another railroad company, owning a line in North Carolina, to form the M. Railway Company which made a mortgage on the whole line to the C. Trust Co., to secure another issue of bonds which were used in part to extend the road into Tennessee. The railroad company defaulted on all the bonds, and the C. Trust Co. commenced a suit to foreclose its mortgage, in which a receiver of the road was appointed. Interventions were filed by various parties, claiming liens on parts of the rolling stock, and the receiver also applied for authority to purchase additional rolling stock necessary for the operation of the road. After investigation by a special master, and with the approval of a committee of bondholders, representing both bonds under the C. Trust Co. mortgage and bonds of the underlying mortgages, orders were made directing the receiver to purchase the rolling stock on which the liens were claimed and the new rolling stock, and to give notes and issue receiver's certificates therefor, which should be a first lien on the whole of the M. Railway Co. property. After the making of such orders, the B. Trust Co. commenced a suit for the foreclosure of its mortgages, obtained the extension of the receivership to its suit, and caused an order to be entered directing that the receiver should conform to all the requirements and orders previously imposed upon him in the C. Trust Co.'s suit. The two foreclosure suits were consolidated. Subsequently, the B. Trust Co. appealed from a decree of foreclosure and sale which adjudged priority to the notes and certificates so issued over all the mortgages, claiming that, as the orders authorizing the same were made before it became a party to the suit, priority over its mortgages could not be given, although it claimed the benefit of the rolling stock purchased with the notes and certificates, and had made no offer to have the same surrendered to the holders of the notes and certificates. *Held,* that the B. Trust

Co., by coming into the case, seeking the advantage of the receiver's administration, and obtaining the order that he should comply with the previous orders in the administration of the property, had ratified and approved all the previous proceedings, and was fully bound thereby, even if, had it not come into the case, the court would have been without power to give the notes and certificates priority over its mortgages. Boston Safe-Deposit & Trust Co. v. Holders of $130,500 of Receiver's Certificates, 75 Fed. 193, reaffirmed.

Speer, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

Henry B. Tompkins and J. R. Lamar, for appellant.

James H. Gilbert, L. H. Spillman, Alex. C. King, J. D. Rouse, and Wm. Grant, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge. This appeal is from a final decree of the circuit court of the United States for the Northern district of Georgia, made on the 8th day of June, 1895, which adjudged that certain receiver's notes held by the appellees are a lien on all the property of the Marietta & North Georgia Railroad Company and the Marietta & North Georgia Railway Company, and entitled to preference "over the bonds represented by complainants, or either of them." The notes held by the appellees were issued by J. B. Glover, receiver, in payment for rolling stock and tools purchased from the appellees, pursuant to orders of the circuit court, in the following amounts, respectively: (1) Samuel W. Groome, for $46,-605, with interest from January 19, 1891, at 7 per cent. per annum; (2) Jackson & Woodin Manufacturing Company, for $22,977.50, with interest from January 19, 1891, at 7 per cent. per annum; (3) Jackson & Sharp Company, for $50,479.30, with interest from January 19, 1891, at 7 per cent. per annum; (4) Rhode Island Locomotive Works, for $25,804, with interest from January 19, 1891, at 7 per cent. per annum; (5) Burnham, Parry, Williams & Co. (Baldwin Locomotive Works), for $10,353.62, with interest from January 19, 1891, at 7 per cent. per annum; (6) George R. Eager, for $2,276.75, with interest from January 19, 1891, at 7 per cent. per annum,—making an aggregate of $158,496.17. On or about January 1, 1887, the defendant the Marietta & North Georgia Railway Company was formed by the consolidation of the corporations known as the Marietta & North Georgia Railroad Company, of Georgia, and the Georgia & North Carolina Railroad Company, of North Carolina. The effect of such consolidation was to merge the old companies in the new one, so that all assets of the constituent companies passed to the new consolidated company, and from it to the custody and control of the court, and the separate existence of each old company, as such, was thereby practically terminated. See Mor. Priv. Corp. § 953; Thomp. Corp. §§ 395–410. Prior to the consolidation, one of the constituent companies, viz. the Marietta & North Georgia Railroad Company, hereinafter called the "Railroad Company," had made an issue of its first mortgage bonds, under a deed

of trust dated July 1, 1881, to the appellant, the Boston Safe-Deposit & Trust Company, to the amount, at par, of $720,000, and had made an issue of its second mortgage bonds, also secured by a deed of trust to the Boston Safe-Deposit & Trust Company of same date, viz. July 1, 1881, to the amount, at par, of $486,000. At the time of the consolidation the aggregate of these outstanding issues of first and second mortgage bonds was $1,205,000. Immediately after the consolidation, the consolidated company, the Marietta & North Georgia Railway Company, hereinafter called the "Railway Company," made an issue of its bonds, called "consolidated bonds," under a mortgage or deed of trust to the Central Trust Company of New York, dated the 1st day of January, 1887, to the amount of $3,821,000, of which $817,000 were issued in exchange for an equal amount of the outstanding bonds of the old railroad company, viz. 337 first mortgage bonds and 480 second mortgage bonds, which 817 bonds of the old railroad company, out of its total issues of 1,206 bonds of both classes, were held by the Central Trust Company of New York at the time of the filing of its bill of complaint herein as collateral security for the consolidated bonds. When the proceedings hereinafter detailed were instituted, there were, therefore, but 389 of the first and second mortgage bonds of the old railroad company bonds, represented by the appellant, the Boston Safe-Deposit & Trust Company, outstanding in the hands of individual holders.

Default having been made in payment of the interest upon the consolidated bonds, which became due upon January 1, 1891, and was payable at the office of this appellant, the Central Trust Company of New York, 11 days after that default, filed a bill in equity against the consolidated railway company for the foreclosure of the mortgage securing the same, and in its bill alleged that it was the holder of 817 bonds of the old railroad company, which it had received in exchange, as collateral for a like amount of the consolidated bonds issued by the consolidated railway company. Upon the filing of this bill, the court made an order, upon motion of the solicitors of the complainant, taking jurisdiction of the cause, and upon January 19, 1891, an order was entered appointing James B. Glover temporary receiver of the property, with all the usual powers thereunto appertaining, "and to manage, operate, and maintain the lines of railroad of" defendant. This was followed, upon February 10, 1891, by an order appointing him permanent receiver, which continued the powers vested in him by the former order. Upon April 6, 1891, a decree of pro confesso upon this bill was entered in the usual form. Interventions were filed in the cause by the appellees, claiming title to certain equipment and tools then in the possession of the receiver, as follows: Samuel W. Groome. March 17, 1891; Jackson & Woodin Company, March 17, 1891; Rhode Island Locomotive Works, March 31, 1891; Baldwin Locomotive Works, upon the petition of the receiver, June 3, 1892; Jackson & Sharp Company, April 7, 1891; S. W. Groome, for car trucks, May 31, 1891; George R. Eager, July 6, 1891. To certain of these interventions the complainant the Central Trust Company of New York demurred, and,

the demurrers having been overruled, answers were filed by the same counsel on behalf of the Central Trust Company and the bondholders represented by it. The issues were then referred to a special master, who duly reported in each case, sustaining the title of the interveners to the property claimed, and recommending its purchase by the receiver as being indispensable to the operation of the road. Exceptions were filed on behalf of the Central Trust Company to the reports so made, which exceptions were overruled by the circuit court, and orders were thereupon made confirming the reports, and directing the receiver to purchase the equipment and tools at the values reported by the master, and to issue his notes, dated January 19, 1891, in payment therefor. From these orders appeals were taken to this court by the complainant Central Trust Company of New York in the cases of Groome, Jackson & Woodin Company, and Jackson & Sharp Company. The appeals resulted in decrees of affirmance in three of the four cases. In the fourth case a decree of reversal was made, remanding the cause to the circuit court with instructions to enter an order directing the receiver to pay within 15 days the balance due the intervener, Groome, or in default thereof to deliver the property claimed. These appeals were decided in December, 1891, and are reported in 1 C. C. A. 139, 48 Fed. 864; 1 C. C. A. 130, 48 Fed. 865; and 1 C. C. A. 140, 48 Fed. 875. The receiver's notes for the amounts stated above were thereupon issued to the appellees, who received the same in payment for their property, which was acquired by the receiver with the sanction of the court, in order to give effect to the purpose of the court that the railroad should be continued and maintained in operation. This transaction was a simple purchase, whereby title passed, and conformed to the recommendation of the bondholders' committee, quoted below.

During the pendency of these proceedings, action had also been taken by the receiver, in relation to the purchase of the equipment, by direct petition to the court. The first petition was filed by the receiver March 25, 1891, from which it appeared that the balance then due was $291,933 for rolling stock, which was stated to be "absolutely necessary to be retained, in order to operate said railway." Upon May 2, 1891, an amended petition was filed by the receiver, praying for leave to issue receiver's certificates in order to make payment, among other things, for the equipment in question, and annexed to this report are two exhibits. Exhibit A was a report of a committee of bondholders, which contains the following recommendation: "With regard to the fifteenth item, 'rolling stock now in use,' your committee recommend this payment, with remark that special care be taken that the railroad shall acquire perfect title to the property; amount stated at $291,933." Exhibit B was a report of the proceedings of a meeting of the bondholders held April 15, 1891, at which there were present holders of consolidated bonds to the number of 3,197, and holders of first mortgage bonds, on behalf of whom this appeal is taken, to the number of 28. At this meeting the committee of bondholders was appointed whose report appears as Exhibit A to the receiver's pe-

tition.   This committee was "fully authorized and empowered to take all steps toward issuing receiver's certificates, having priority over the mortgage securing said bonds, and obtaining from the courts proper orders therefor."   Upon May 18, 1891, an order was made, referring the receiver's petition and amended petition to a special master, to report upon the matter of the proposed issue of receiver's certificates; and on August 6, 1891, a second amended petition was filed, which was also referred to the special master. Upon September 16, 1891, an exhaustive report was made by the special master, recommending, among other things, the purchase of the rolling stock as being "absolutely essential to the operation of the road at all, and, there being no way of paying for same, except by receiver's certificates, the master recommends that they be authorized as requested.   The bondholders' committee recommend that authority be issued as asked for."   Exceptions were filed to this report by the Central Trust Company, which exceptions were overruled by order made December 7, 1891.   Upon December 9, 1891, an order was made authorizing the receiver to issue certificates to the amount of $325,000, for certain purposes therein specified, ordering that said certificates, when issued, "shall become and are hereby declared to be a first lien on the whole of the Marietta & North Georgia Railway property."   This order also contains the following provision:

"Provided, that this order shall not affect in any way certain notes heretofore authorized to be given and issued by the receiver, amounting to about $250,000, in payment for rolling stock on the road when the same went into the hands of the receiver, or the lien of the same, or the lien of any certificates issued in lieu of or to take the place of said notes, or to be sold for the payment of said notes.   Any such receiver's certificates, when issued for the purposes mentioned in this proviso, shall have equality of lien with the certificates or debentures authorized in this order, and shall be entitled to the same priority of payment."

Upon March 30, 1892, a bill was filed by the Boston Safe-Deposit & Trust Company against the Marietta & North Georgia Railroad Company, the Marietta & North Georgia Railway Company, and the Central Trust Company of New York, alleging the issue by the old railroad company of its first mortgage bonds to the amount of $720,000, and its second mortgage bonds to the amount of $486,000, and that default had been made in the payment of interest thereon, which became due upon January 1, 1891.   The bill further alleged the insolvency of the railroad company, the receivership in the suit instituted by the Central Trust Company of New York, and prayed that the complainant "may be allowed to refer to and use all the pleadings, papers, and other documents connected with said suit as fully and as freely as if the same formed a part of this suit now brought by your orator."   This bill of complaint was not filed until default had continued for one year and three months.   Upon April 5, 1892, an order was made appointing J. B. Glover receiver under the bill filed by the Boston Safe-Deposit & Trust Company, which order contained the following directions:

"That said receiver shall manage, operate, and maintain said lines of railroad," and keep them "open as a public highway for the transportation of

passengers and freight. And it is further ordered that the receiver comply with and conform to, in the management of said property, all the requirements and orders hereinbefore imposed upon him under the orders appointing him receiver in the case of the Central Trust Company of New York v. Marietta & North Georgia Railway Company."

A decree pro confesso upon the bill of the Boston Safe-Deposit & Trust Company was entered upon June 6, 1892. Upon January 30, 1893, an amended and supplemental bill was filed by the Central Trust Company of New York, alleging defaults in payment of interest upon the consolidated bonds on January 1 and July 1, 1891, January 1 and July 1, 1892, and January 1, 1893. On March 13, 1893, upon the consents of the Central Trust Company of New York and the Boston Safe-Deposit & Trust Company, an order was made consolidating the causes, which was followed by a decree of sale in the consolidated cause, entered May 13, 1893. In this decree the priority of the receiver's notes over the mortgages was recognized. Upon February 17, 1894, a report was rendered by the special master, to whom it had been referred to "report all claims outstanding and unpaid that are prior in rank to the liens of the first and second mortgages and the consolidated mortgage," which found that the receiver had given his notes to the appellees, as stated above, amounting in the aggregate to $158,496.17, besides certain receiver's notes issued to the Baldwin Locomotive Works for additional engines, amounting to $15,588.71, and that these amounts are "a lien upon said rolling stock superior to the liens of either one of the mortgages, ranking among themselves equally." Exceptions were filed to this report by the Boston Safe-Deposit & Trust Company, but no ground of objection whatever is stated. A supplemental decree of sale was made upon June 4, 1895, modifying the decree of May 13, 1893, and thereafter, upon June 8, 1895, was made the decree here appealed from, adjudging that the receiver's notes issued in payment for the equipment and tools "are a lien on all the property of the defendant, and entitled to preference over the bonds represented by complainants, or either of them." The sole ground upon which this appeal is taken is that the Boston Safe-Deposit & Trust Company was not a party to the cause at the time of the issuance of the receiver's notes. A like decree was made in the intervention of S. W. Groome, in which the receiver had been directed to pay said Groome $5,500, or deliver to the intervener the car trucks which had been the subject of the intervention. A final decree of sale was entered upon October 10, 1895, adjudging that all the rights, claims, demands, and liens of all the other "parties to this cause in and to the said mortgaged premises, property, rights, and franchises, and every part and parcel thereof, was herein ordered to be sold, be foreclosed, cut off and forever barred, and that all the parties to this cause shall look alone to the funds arising from the sale as herein ordered for the payment of their respective claims." This decree of sale in effect included the rolling stock and tools purchased from the appellees, as well as all other property in the possession of the receiver, and it fully recognized the priority of the receiver's notes over all the mortgage bonds.

The petition of appeal of the Boston Safe-Deposit & Trust Com-

pany alleges that the decrees of the court under which said notes were given by said receiver were "rendered on the ——— day of July, 1891, in the suit of Central Trust Company of New York v. Marietta & North Georgia Railway Company, and at a time long previous to the date when this petitioner filed its bill to foreclose its mortgage against the Marietta & North Georgia Railroad Company, to which the Marietta & North Georgia Railway Company was successor, to wit, on the 29th day of March, 1892." The assignment of errors alleges that the court erred in overruling the exceptions, and in awarding priority to the lien of the holders of the receiver's notes, but does not state wherein the error lay, except on the ground that appellant was not a party to the suit in which the notes were given. By stipulation, it is conceded that, of the 1,206 bonds issued by the railroad company under the deed of trust to the appellant, 817 were held by the Central Trust Company of New York at the time its bill was filed on January 8, 1891, and, further, that the receiver has paid, from time to time, interest upon the receiver's notes held by the appellees, without exception or objection on the part of the appellant.

From this summary it appears that the appellant, representing the underlying bonds on a portion of the consolidated railway, which bonds were dishonored by default in the payment of stipulated interest, and having notice that there was also a default in the interest on the consolidated bonds, stood by for 15 months, while the court, at the instance of the holders of the consolidated bonds and of holders of over half of the bonds represented by the appellant, dealt with the property, a chartered railway, and endeavored to keep it a going concern; that the railway was destitute of rolling stock and equipment, and that the same had to be provided; that, after careful examination and to the best advantage, the rolling stock and equipment were purchased through the issue of receiver's notes, which were declared a first lien on the entire railway property; that thereafter the appellant came in the court and into the case, and impliedly ratified all that had been done for the protection and preservation of the property by seeking the advantage of the receiver's administration, and expressly ratified and approved the previous proceedings by obtaining an order that the receiver should carry out and comply with all previous orders of the court as to his administration of the property; that thereafter the appellant obtained a decree from the court foreclosing its lien on the property, and an order of sale of the same, subject to the lien of the receiver's notes as first granted and declared by the court; and that thereafter the appellant obtained decrees from the court by which the rolling stock and equipment purchased by the receiver were ordered sold as a part and parcel of the specific railroad property on which appellant claimed a specific lien, as well as a part and parcel of the entire railway system, on a portion of which appellant claimed a prior lien.

On similar circumstances, we have just decided, in the case of the same appellant against the holders of certain receiver's certificates (75 Fed. 193), issued in the same case for building a bridge over the Tennessee river, that the appellant ought not to be per-

mitted to question the priority of the receiver's certificates over the mortgage bonds represented by it, citing Miltenberger v. Railway Co., 106 U. S. 288, 1 Sup. Ct. 140; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809; Kneeland v. Luce, 141 U. S. 491, 12 Sup. Ct. 32. While the reasons for that ruling are of equal force in the present case, the equity here is more apparent, for here the appellant, while denying the right to purchase equipment, and all responsibility therefor, nevertheless is seeking to take advantage of the rolling stock and equipment to swell the proceeds of the property on which it claims a first lien. It would seem to be the plainest equity that, if by reason of the intervention of appellant in the suit, the court is unable to give the holders of the receiver's notes the lien which it promised, then the rolling stock and equipment purchased with the receiver's notes should be returned to the vendors with a fair rental for about four years' use of the equipment, which rental should be treated as a part of the receiver's expenses, and made a first lien upon the corpus of the property. It may be that, if this course had been suggested by the appellant in the court below, the holders of receiver's notes would have gladly availed themselves of the proposition.

It is contended by counsel that it was optional with the Boston Safe-Deposit & Trust Company to come into the case or stay out of it; that, if it had remained out, it would have been beyond the power of the court to have given any lien arising in the suit instituted by the consolidated mortgage bondholders a priority over the first and second mortgage bonds; and that the Boston Safe-Deposit & Trust Company ought not to be treated worse on coming into court than if it had remained outside of the case. In the same line is the contention that, before the Boston Safe-Deposit & Trust Company came into court and obtained the appointment of a receiver, the court was dealing with the then equity of redemption, and could give or declare no lien to affect prior mortgages. If the Boston Safe-Deposit & Trust Company had remained entirely outside of the case, it is by no means certain that it would have been beyond the power of the court to have put a lien upon the railway property which would have priority over the first mortgage bonds. It must be considered that courts deal with chartered railroads, in suits brought by parties having a sufficient interest, with a view to maintain and preserve the franchises and chartered rights, and to keep the whole a going concern in the public interest, and that, in such instances, it frequently occurs that the court, in possession of and dealing with the property for the purposes and with the views aforesaid, when necessary, declares and establishes liens, in the nature of bottomry, which outrank all previous liens.

It is useless in the instant case to further consider the suggestions, because the Boston Safe-Deposit & Trust Company did come into the case, has had its day in court, and is, in our opinion, fully bound by the proceedings in the court below. The decree appealed from is affirmed.

Speer, District Judge, dissented on the grounds stated in his dissenting opinion in the case of Central Trust Co. v. Marietta & N. G. R. Co., 21 C. C. A. 291, 75 Fed. 193.